IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **HERITAGE MOTORCOACH RESORT & MARINA CONDOMINIUM ASSOCIATION INC.,** ) ) ) | |
| **Plaintiff,** ) ) | |
| v. ) ) | CIVIL ACTION NO. 22-00036-JB-M |
| **AXIS INSURANCE COMPANY,** ) ) ) | |
| **Defendant.** ) | |

## ORDER

This matter is before the Court on Defendant, Axis Insurance Company's ("Axis") Motion for Partial Summary Judgment ("Motion"). (Doc. 27). The parties have fully briefed the Motion (Docs. 28, 31, 36, and 37) and the Court conducted a hearing at which both parties appeared and argued. The Motion is ripe for resolution. Upon due consideration, the Court concludes that the Motion is due to be GRANTED IN PART and DENIED IN PART.[1]

**I.     Background**

This is an action brought on an insurance policy for property damage caused by Hurricane Sally. Plaintiff Heritage Motorcoach Resort & Marina Condominium Association Inc. ("Heritage") owns an RV park in Orange Beach, Alabama ("Property"). (Doc. 28-1). The Property includes a marina, dock, and a clubhouse. (*Id.*). At all relevant times, the Property was insured under Axis policy AXPA0146803 ("Policy"). (Doc. 28-2).

---

[1] Heritage filed a Motion to Strike Axis' Supplement to its Memorandum in Support of Motion for Partial Summary Judgment. (Docs. 31 and 32). Upon due consideration, and for the reasons set out in Axis' Opposition (Doc. 35), the Motion to Strike is DENIED.

1

The Property was damaged by Hurricane Sally when it struck Orange Beach on September 16, 2020. The marina, dock, and other areas of the Property were damaged, and Heritage submitted a claim under the Policy.[2] Axis investigated the claim. It dispatched adjuster Darrin Knowles, who visited the Property, took photos, and interviewed Heritage representative Dwight Montz. Axis also engaged Randall Hillmann, P.E. ("Hillmann"), who completed an inspection of the Property on October 16, 2020, including the marina. In his report, Hillmann concluded marina structures sustained damage caused by storm tide forces, wave action and debris impact. (Doc. 28-4 at PageID.526, 537 - 38). He opines the marina structures did not sustain wind damage. (*Id.* at PageID.539). In his deposition, Hillmann confirmed the damage to the marina was caused by storm surge, vessel strikes, and wave action:

> Q. As you sit here today, can you quantify what percentage of the marina was done by vessel strikes versus storm surge?
>
> A. I can't really. I mean, it's I'm not -- no, I can't really do that. I mean, there -- there -- I think it was, you know, I think I can say with relative certainty that they both caused it or there was -- there was contribution from both vessels and just wave action. But I can't really give a percentage one way or the other.

(Doc. 36-2 at PageID.1177).

Heritage also appointed an expert, J. Martin Pitts, P.E. ("Pitts"). Pitts visited the Property and inspected the marina. Axis contends it is undisputed that Pitts "concluded that the storm surge from Hurricane Sally drove boats and other debris into the marina area

---

[2] Axis offers the following as an undisputed fact: "On September 16, 2020, Hurricane Sally passed through the Orange Beach, Alabama area damaging Heritage's marina and dock, among other areas of the subject property." (Doc. 28 at PageID.373). Heritage denies this statement in part. (Doc. 36 at PageID.1158). Heritage agrees its marina and dock sustained damage, but insists "substantial other structures of the property sustained damage also" and that the damage "is not limited simply to the marina and dock." (*Id.*). Axis does not state or even imply otherwise. To the contrary, Axis affirmatively states areas of the Property other than the marina and dock were damaged.

causing much of the damage." (Doc. 28).  Heritage denies this was Pitts' conclusion, but Pitts' report undermines Heritage's denial.  Pitts reported his conclusion "specifically" and unequivocally: "[T]he storm drove boats and other debris into the marina area causing much of the damage." (Doc. 28-8 at PageID.582).  Pitts opines "[w]ave action and debris damaged most of the connections and framing members used to construct the marina." (*Id.*).  Pitts reiterates his conclusion: "[I]t is the professional opinion of J. Martin Pitts PE that much if not all of the damage at this marina was caused by boats and water borne debris being driven into the marine faculty by wave action." (*Id.*).  Pitts supports his conclusion with "photographs of the marina showing boats being driven into the marina during the storm." (*Id.*).  Pitts was also deposed, and testified as follows:

> Q.   So is it fair to say -- I mean, I know obviously things hit this marina but you don't know what hit what.  Is that fair to say?
>
> A.  Yes, sir.
>
> Q.   But at least not an insignificant part of the damage was just caused by the water surge itself; right?
>
> A.   I would think so.  Again, it would be difficult for me to quantify what –
>
> Q.  Of course.  I'm sorry, I didn't mean to interrupt you.
>
> A.  It would be difficult for me to say exactly how much.

(*Id.* at PageID.1184).

> Q. So, when you say that -- when you testified earlier "wave action of boats and water borne debris," like you said, you can't quantify what may have been damaged by water itself versus what may have been struck by boats or debris carried by water; correct?
>
> A. That's correct.

(Doc. 36 at PageID.1185).

> Q.  There's certain types of damage that you could differentiate from a vessel to just a storm surge; is that fair to say?
>
> A.  I think so.  When you look at the piling and you see that the piling has been splintered, most likely that has to do with either a marine vessel or debris striking the piling.  It takes a lot to bust a piling.

(*Id.* at PageID.1186).

Following its investigation, Axis denied Heritage's claim for damage to the marina, based on the following Policy exclusion:

> **B. Exclusions**
>
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> **g.  Water**
>
> **(1)**  Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

(Doc. 28-2 at PageID.443 – 444).  Axis "partially denied the claim because the evidence showed that the damage to the marina occurred to due to the storm surge during Hurricane Sally." (*See* Axis' Memorandum in Support, paragraph 6., Undisputed Facts (Doc. 28 at PageID.374), and Heritage's Opposition Statement of Undisputed Facts (Doc. 36 at PageID.1158)).

Heritage also claims Axis has failed to pay losses for fences, trees, and debris removal.

## II. Summary Judgment Standard

Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is appropriate when the pleadings, affidavits, and depositions demonstrate that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The party moving for summary judgment meets its initial burden by "showing – that is, pointing out" that the non- movant lacks evidence to support the essential elements of his claim. *Id*. at 325. After the movant has met this initial burden, the non-movant must present "substantial evidence" on each essential element of her claim. *Id*. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id*. at 327 (quoting Rule 1, Fed.R.Civ.P.).

## III. Analysis

Axis moves for summary judgment on Heritage's claim for damage to the marina and on its claim for bad faith.

### A. The Marina Claim

According to Axis, the damage sustained to Heritage's marina is excluded by the water damage exclusion in the Policy. In pertinent part, the water damage exclusion states:

### B. Exclusions

> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> > **g. Water**
> >
> > > **(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of

5

>> water, or spray from any of these, all whether or not driven by wind (including storm surge);
>
> …
>
>> (5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (1) …

(Doc. 28-2 at PageID.507 - 508).

Based on the reports and testimony of Hillmann and Pitts set out above, Axis argues there is no material factual dispute that the marina was damaged by Hurricane Sally storm surge and debris and boats driven by it. Axis contends the boats and debris constitute "waterborne material" moved by the storm surge. Additionally, Axis takes the position that the exclusion applies whether these factors acted independently or concurrently, in light of the Policy language stating, "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

Axis cites a number of cases in support of its Motion, the most persuasive being *Preis v. Lexington Ins. Co.*, 508 F. Supp. 2d 1061 (S.D. Ala. 2007). The Court in *Preis* addressed the application of a water damage exclusion provision that is in all material respects analogous to the exclusion at issue here. The water damage exclusion in *Preis* stated:

> We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
>
> …
>
> **c. Water Damage, meaning:**
>
>> (1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;....

*Preis*, 508 F. Supp. 2d at 1066 – 67. The plaintiff-insured in *Preis* argued this exclusion did not apply to damage caused by debris, whether or not the debris was carried by flood or other water

6

actions listed as "Water Damage" in the policy. The court rejected plaintiff's argument, concluding, "the Policy excludes loss resulting either 'directly or indirectly' from flood, and loss from debris that strikes covered property when carried there by flood waters is loss caused indirectly by flood and thus excluded." *Id.* at 1074. The Court also finds the other cases on which Axis relies to be analogous and supportive of its Motion. *See Ervinwood Marine, Inc. v. Fireman's Fund Ins.,* 1992 WL 213123, *1 (Ohio Ct. App. Sept. 4, 1992) and *Porter v. Grand Casino of Mississippi, Inc. - Biloxi*, 131 So. 3d 952, 954 (Miss. Ct. App. 2014).

Heritage makes a number of arguments in opposition to the Motion on the marina claim, none of which the Court finds persuasive. First, Heritage argues neither Hillmann nor Pitts affirmatively establish the marina was damaged by storm surge. Heritage then notes, though, that Hillmann testified the damage was caused by storm surge, vessels and wave action. Pitts, according to Heritage, testified that the marina damage was caused by "many factors."

Heritage mischaracterizes Hillmann's and Pitts' opinions regarding storm surge. Hillmann and Pitts opine, unequivocally, that the marina was damaged by storm surge. Hillmann testified, "I can say with relative certainty that [storm surge and vessel strikes] both caused it or there was -- there was contribution from both vessels and just wave action." ((Doc. 36-2 at PageID.1177). Hillmann also opines, unequivocally, that the marina did not sustain wind damage. Likewise, the "many factors" causing marina damage to which Pitts testified are storm surge, wave action of boats and water borne debris. Pitts does not attribute damage to wind.

Heritage strains to obfuscate Hillmann's and Pitts' opinions by noting they cannot assign relative percentages to damage caused by storm surge and damage caused by vessels and debris driven by storm surge. But here, Heritage misapprehends the legal effect of this distinction.

7

There is none.  The Policy excludes coverage for damage whether caused by storm surge or vessels and debris driven by it.  The water damage exclusion expressly encompasses damage caused by storm surge acting independently and by vessels and debris "carried or otherwise moved by" it.  (Doc. 28-2).

Additionally, Heritage argues "unmoored vessels" are not "waterborne material," and damage caused by "unmoored vessels" is not excluded.  Apart from separating "unmoored vessels" from the instant context of being driven by storm surge, Heritage's argument imposes ambiguities in the Policy where none exist.  Although Heritage contends the phrase "waterborne material" is ambiguous, it argues the words "waterborne" and "material" are not.  Specifically, Heritage takes the position that vessels are not "waterborne material" because vessels are not "material."  For this argument, Heritage offers the Merriam Webster definition of "material" as, "the elements, constituents, or substances of which something is composed or can be made."  However, Merriam Webster defines "material" also, and primarily, to mean "relating to, derived from, or consisting of matter."  Vessels are unambiguously "material" by this primary definition, and by the meaning a person of ordinary intelligence would reasonably give it.  Heritage invites the Court to treat vessels as essentially *immaterial* because vessels are "finished product[s]," and not constituent elements of something else.  (Doc. 36 at PageID.1161).  The Court declines this invitation because it would insert an ambiguity in the Policy "by strained [and] twisted reasoning."  *Kelley v. Royal Globe Ins. Co.,* 349 So.2d 561, 563 (Ala.1977).  Further, it is undisputed that "waterborne" means "supported, carried, or transmitted by water."  Therefore, there is no genuine dispute that the unmoored vessels in this case consist of matter, and that they were

supported, carried or transmitted by water into the marina. The unmoored vessels constitute "waterborne material" for purposes of the Policy.[3]

Heritage also contends vessel allisions are "generally" covered losses. (Doc. 36). However, this case does not involve a mere vessel allision. Heritage is correct that "[n]o surge, flood, or surface water is necessary for recreational vessels to strike a marina." (*Id.* at PageID.1162). Vessel allisions can, and often do, result solely from negligent navigation. In many cases, unmoored vessels, that are manned and operating under their own power and in perfect conditions, strike stationary objects due to negligence. However, the vessel strikes in this case were of a materially different sort. These were unmoored, unpowered, and unmanned vessels being driven aimlessly by hurricane storm surge as waterborne material. While storm surge is not necessary for vessels to strike a marina, as Heritage argues, it is undisputed that Hurricane Sally storm surge did cause these vessels, in this case, to strike this marina. That is an excluded loss under the Policy.

Next, Heritage contends Hillmann and Pitts make clear "that questions of fact remain as to the roles that storm surge, debris, *wind*, and vessels caused." (Doc. 36 at PageID.1163 (emphasis added)). However, neither expert opines that *wind* caused damage *to the marina*. The contrary is true. Heritage has come forward with no evidence that wind caused damage to the marina such that there may be coverage under the Policy.

Heritage also argues that application of the anti-concurrent clause in the Policy can lead to an absurd result. It contends Axis' position "would mean that in the event that any type of

---

[3] Of course, a moored vessel cannot allide with objects apart from those within the reach of its moorings.

storm surge/flooding occurs, coverage for the event is automatically excluded for the entire property." (Doc. 36 at PageID.1164). Heritage relies on *Leonard v. Nationwide Mutual Ins.* Co., 438 F. Supp. 2d 684 (S.D. Miss. 2006). (*Id.* at 1162). *Leonard* involved a loss caused by Hurricane Katrina, and a policy which provided coverage for wind and rain but not flood. The court in *Leonard* reviewed a policy exclusion for loses "resulting directly or indirectly from . . . [w]eather conditions, if contributing in any way with an exclusion," including flooding. 438 F. Supp. 2d at 694. As to that particular exclusion, the court found its enforcement "would mean that an insured whose dwelling lost its roof in high winds and at the same time suffered an incursion of even an inch of water could recover nothing . . . ." *Id.* The instant case does not concern an analogous "weather conditions" exclusion. Furthermore, as Axis notes, there is no evidence in this case that the marina sustained wind damage. As for interplay between losses caused by wind as opposed to or concurrently with water, the court in *Leonard*, applying Mississippi law, held:

> [W]here the insured property sustains damage from both wind (a covered loss) and water (an excluded loss), the insured may recover that portion of the loss which he can prove to have been caused by wind. . . [The insurer] is not responsible for that portion of the damage it can prove was caused by water. To the extent property is damaged by wind, and is thereafter also damaged by water, the insured can recover that portion of the loss which he can prove to have been caused by wind, but the insurer is not responsible for any additional loss it can prove to have been later caused by water.

*Id.* at 695 (citations omitted). *Leonard* does not support Heritage's argument concerning the application of the anti-concurrent clause in the Policy in this case.

Finally, the Court finds Heritage's attempts to distinguish *Preis* and the other cases on which Axis relies to be unpersuasive. The distinctions noted by Heritage are not material to the facts or issues presented in this case. The policy provisions and facts in *Preis* especially, and in

*Ervinwood Marine, Inc.* and *Porter* are on point and supportive of Axis' Motion as it relates to the claim for marina damage.

      **B.    The Bad Faith Claim**

Axis also moves for summary judgment on Heritage's claim for bad faith. Heritage's claim is for Axis' failure to pay for items other than the marina, specifically fences, trees, and debris removal. It argues that this refusal to pay is without any reasonably legitimate or arguable reason. In response, Axis notes that it has made partial payments to Heritage. However, it is undisputed that those partial payments were not specified for losses to the items made the basis of Heritage's bad faith claim. In fact, Axis has provided no evidence whatever linking those payments to any item or items of loss claimed by Heritage.

On this record, the Court will not grant summary judgment as to Heritage's bad faith claim. However, this order is without prejudice to Axis' ability to prove that it has paid on the subject losses, such that it is entitled to judgment on the bad faith claim.

**IV.    Conclusion**

Upon due consideration, and for the reasons stated herein, the Court GRANTS Axis' Motion as it relates to Heritage's claim for damage to the marina and DENIES Axis' Motion on Heritage's bad faith claim.

**DONE and ORDERED** this 4th day of April, 2023.

                                                                            /s/ JEFFREY U. BEAVERSTOCK
                                                                            CHIEF UNITED STATES DISTRICT JUDGE